THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE
SEARCH OF:
Information associated with a cellular
telephone assigned phone number
417-389-6449 that is stored at premises
controlled by AT&T,
208 South Akard Street,
Dallas, Texas 75202

Case No. 22-SW-2179DPR

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Stacy Lee Moore, being first duly sworn, do hereby depose and state that:

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"), and I am currently assigned to the Joplin, Missouri, Resident Agency of the FBI's Kansas City, Missouri, Division. As such, I am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2. As part of my duties with FBI, I investigate criminal violations of Title 18 of the United States Code, including violations of 18 U.S.C. § 1201(a)(1), that is, kidnapping resulting in death.

3. This Affidavit is made in support of an application for a search warrant for information associated with a cellular telephone assigned phone number 417-389-6449 ("TARGET CELLULAR DEVICE") that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 208 South Akard St, Dallas, Texas 75202. The information to be searched is described in the following paragraphs and in Attachment A. The purpose of the search is to locate and collect items that constitute evidence of the commission of kidnapping resulting in death, in violation of 18 U.S.C.

1

§ 1201(a)(1).

4. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T (the "PROVIDER") to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

5. I have probable cause to believe that the crime of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1), has been committed by the user of the TARGET CELLULAR DEVICE. There is also probable cause to search the information described in Attachment A for evidence, fruits, and instrumentalities of these crimes as further described in Attachment B.

6. The statements in this affidavit are based on personal observations, my training and experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, this affiant has not included each and every fact known to me concerning this investigation.

## STATUTORY AUTHORITY

7. Title 18, U.S.C. § 1201(a)(1) prohibits any person from unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away and holding for ransom or reward or otherwise any person, or attempting to do so, except in the case of a minor by the parent thereof, which occurs when the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail

or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

## PROBABLE CAUSE

8. On October 31, 2022, at approximately 6:30 p.m., Ashley Bush (Ms. Bush) was reported as a missing person to the Benton County, Arkansas Sheriff's Office by her fiancé, Joshua Willis (Mr. Willis). Mr. Willis reported that he had last seen Ms. Bush in the passenger seat of an older model, tan pickup truck on October 31, 2022, at 3:09 p.m., at the intersection of Highway 72 and Highway 43 in Maysville, Arkansas. Mr. Willis described the driver of the vehicle as a white female in her 40's, with shoulder length brown hair, whom Mr. Willis knew as "Lucy." Mr. Willis advised that Ms. Bush was approximately 31 weeks pregnant.

9. Mr. Willis informed Benton County Sheriff's Office investigators that on October 28, 2022, he and Ms. Bush met "Lucy" at the Gravette, Arkansas, public library. "Lucy" was driving the same older model tan pickup truck he had observed her in on October 31, 2022. During this meeting, Ms. Bush and "Lucy" discussed employment opportunities for Ms. Bush at a company called Conduent. Later in the evening, "Lucy" messaged Ms. Bush and told her that she wanted Ms. Bush to meet her supervisor at Conduent in Bentonville, Arkansas, on Monday, October 31, 2022, at 9:00 a.m. At approximately 11:00 p.m., on October 28, 2022, "Lucy" again messaged Ms. Bush and informed her that she would meet Ms. Bush at the Handi-Stop convenience store located in Maysville, Arkansas, on Monday, October 31, 2022, to take Ms. Bush to meet her supervisor at Conduent.

10. On October 31, 2022, Mr. Willis drove Ms. Bush to the Handi-Stop convenience store

3

where Ms. Bush met "Lucy." Mr. Willis noted that "Lucy" was driving the same pickup truck that he had observed on October 28, 2022. At approximately 3:00 p.m., Mr. Willis received a text message from Ms. Bush stating that she was in Gravette, Arkansas, and on her way to the Handi-Stop convenience store where she had arranged to be picked up. Mr. Willis reported to the Benton County Sheriff's Office that while he was waiting for Ms. Bush to arrive, he observed the same older model pickup truck drive past the Handi-Stop convenience store and turn on to Highway 43 and travel north. Mr. Willis was able to observe that Ms. Bush was the passenger in the vehicle and that "Lucy" was driving. Joshua attempted to contact Ms. Bush by phone but reported that the calls were going to voice mail.

11. On November 1, 2022, Benton County Sheriff's Office detectives met with Mr. Willis in Maysville, Arkansas. During this meeting, Mr. Willis informed the detectives that he had located Ms. Bush's cellular telephone on the side of Highway 43 in Maysville, Arkansas. Mr. Willis directed the detectives to the location where the telephone was located. The detectives recovered the phone and obtained the access code from Mr. Willis. The phone was later transported to the Benton County, Arkansas Sheriff's Office for further review.

12. While reviewing the phone, detectives were able to locate a Facebook account for "Lucy." The account appeared to have been created on October 25, 2022, and the profile name was identified as "Lucy Barrow." Detectives located a public posting on the account that read "I have a bunch of baby items if any moms to be need them."

13. When Benton County Sheriff's Office Detective Simpson returned Mr. Willis to the Handi-Stop convenience store, he was approached by Rick Burrow. Burrow told Detective Simpson that on October 31, 2022, he and Sawyer McGee were traveling south

4

on Highway 43 near Maysville, Arkansas. While driving, he and McGee observed an unknown male subject throw a red and black cellular telephone from the window of his vehicle as the vehicle traveled north on Highway 43. Detective Simpson made contact with McGee who confirmed the information provided by Burrow and added that the vehicle in question was a blue or light gray Chevrolet pickup truck.

14. Detective Alison Nguyen with the Benton County Sheriff's Office issued an emergency request with Facebook, now Meta Platforms Inc, to request records associated with the Facebook profile of Lucy Barrow. Facebook provided information to Detective Nguyen indicating that the Lucy Barrow profile was created on October 25, 2022 at 00:22:45 UTC. The registration internet protocol (IP) address was identified as 2607:fb91:2f08:c891:c431:e452:f173:b495. Detective Nguyen was able to determine that this IP address was owned/maintained by T-Mobile. Detective Nguyen requested an emergency disclosure from T-Mobile and learned that this IP address was assigned to JAMIE WATERMAN, date of birth June 16, 1980, at 1848 Laughlin Ridge Road, Pineville, Missouri.

15. Detective Kyle Naish with the Benton County Sheriff's Office submitted an exigent request for Ms. Bush's cellular telephone provider, T-Mobile for data associated by the cellular telephones used by Ms. Bush and Mr. Willis. Detective Naish requested Call Detail Records with Cell Sites, and TDOA/ Timing Advance for both devices. Detective Naish reviewed the data provided by T-Mobile results and manually reviewed information contained of Ms. Bush's cellular telephone. Detective Naish observed a timeline of events via the Ms. Bush's Google Maps account. Detective Naish discovered that Ms. Bush's cellular telephone traveled from Gravette to Maysville, Arkansas, on

5

October 31, 2022, at approximately 11:07 a.m. and left the area of Maysville, Arkansas, at approximately 11:41 a.m. The cellular telephone then traveled approximately 103 miles through Bella Vista, Arkansas and southern Missouri for the next seven hours. Detective Kyle Naish observed the cellular telephone returned to Maysville, Arkansas at approximately 6:51 p.m.

16. Detective Nguyen also requested records related to Ms. Bush's Gmail account from Google. Upon reviewing the records received from Google, in combination with T-Mobile records, Detective Kyle Naish discovered that Ms. Bush's cellular telephone left Maysville, Arkansas and traveled to an area near Pineville, Missouri, at 1:09 p.m. From 1:09 p.m. to 1:28 p.m., Ms. Bush's cellular telephone was in the area of Laughlin Ridge Road, in Pineville, Missouri, approximately .15 miles from a residence located at 1848 Laughlin Ridge Road, Pineville, Missouri. This is the residence of JAMIE and AMBER WATERMAN.

17. On October 31, 2022, a call was placed to the McDonald County, Missouri 911, reporting that AMBER WATERMAN was having a medical emergency related to her pregnancy. AMBER WATERMAN met with emergency medical technicians (EMT) at a store located in Longview, Missouri. When AMBER WATERMAN arrived at this location, she provided the EMTs with an unresponsive newborn infant. EMT personnel attempted to revive the infant but their efforts were unsuccessful. The infant was transported to the Ozark Funeral Home by EMT personnel.

18. On November 2, 2022, personnel with the Benton County, Arkansas medical examiner's office took custody of the deceased infant and transported the deceased infant from the Ozark Funeral Home to Benton County, Arkansas. The deceased infant was later

6

Case 6:22-sw-02179-DPR   Document 1-1   Filed 12/27/22   Page 6 of 13

transported to the Arkansas State Crime Laboratory in Little Rock, Arkansas where an autopsy was performed. During the autopsy, medical examiners examined the placenta that was recovered with the deceased infant and determined that a partial uterus and at least one ovary was attached to the placenta. Medical personnel determined that the deceased infant had been removed from the mother and was not born naturally. DNA from the deceased infant was also collected.

19. On November 1, 2022, Benton County Sheriff's Office detectives arrived at the home of JAMIE and AMBER WATERMAN in connection with the investigation of Ms. Bush's disappearance. While on scene, the detectives noted that a tan Chevrolet pickup truck located on the property contained what appeared to be a large amount of blood within the vehicle. The vehicle was later seized in connection with the investigation. It is anticipated that DNA evidence will be recovered from the vehicle.

20. On November 3, 2022, a state search warrant, issued in McDonald County, Missouri, was served at the residence located at 1848 Laughlin Ridge Road, Pineville, Missouri. The search was conducted by members of the McDonald County Sheriff's Office, the Benton County Sheriff's Office, and the FBI. The FBI evidence response team members from the Kansas City and the Little Rock Divisions participated in the search.

21. The search of the premises resulted in the seizure of seven cellular telephones. It is not known if the TARGET CELLULAR DEVICE is among the devices so seized.

22. While the search was being executed, FBI SA Brenan Despain, FBI Task Force Officer Kris Moffit, and Benton County Sheriff's Office Detective Patrick Stuart traveled to JAMIE WATERMAN's place of employment and conducted a non-custodial interview of JAMIE WATERMAN. During this interview, JAMIE WATERMAN advised that on

7

the evening of October 31, 2022, he discovered that there was blood inside the tan colored Chevrolet pickup truck. JAMIE WATERMAN assumed that the blood came from his wife AMBER WATERMAN due to her pregnancy complications. When JAMIE WATERMAN questioned AMBER WATERMAN about the blood, AMBER WATERMAN did not acknowledge the source of the blood. JAMIE WATERMAN watched AMBER WATERMAN clean the blood from the pickup truck and thereafter, the rags used to clean the blood were burned in a burn barrel located in front of the residence by AMBER WATERMAN. JAMIE WATERMAN then collected trash from the residence and burned the trash in the same burn barrel.

23. JAMIE WATERMAN stated that when Benton County detectives arrived at his residence on November 2, 2022, he was aware that Ms. Bush had been reported as missing. JAMIE WATERMAN learned of this through social media coverage. After the detectives left the residence at approximately 5:00 a.m. on Wednesday, November 2, 2022, AMBER WATERMAN informed JAMIE WATERMAN that she had killed Ms. Bush and then quickly changed her story and said that "Lucy" had killed Ms. Bush.

24. At approximately 6:30 a.m., AMBER WATERMAN led JAMIE WATERMAN to Ms. Bush's body. JAMIE WATERMAN stated that the body was clothed and was lying face-down next to a boat next to the house. The body was covered with a blue tarp. AMBER WATERMAN removed a ring from Ms. Bush's finger and rolled the body onto the blue tarp. JAMIE WATERMAN dragged the body on the tarp to a fire pit behind the residence and AMBER WATERMAN asked JAMIE WATERMAN to get gasoline. JAMIE WATERMAN brought a gallon of chainsaw bar chain oil to AMBER WATERMAN. AMBER WATERMAN proceeded to light the tarp and poured about 1/3 of the oil over

the body. AMBER WATERMAN then began collecting wood to throw on the fire. JAMIE WATERMAN stated that he dragged a small sofa next to the fire and believes that AMBER WATERMAN put the sofa into the fire. After the fire burned for about one hour, AMBER WATERMAN doused the fire with water from a garden hose and JAMIE WATERMAN to remove the body from the burn pile.

25. When JAMIE WATERMAN attempted to move the body, the body was still very hot so JAMIE WATERMAN went to an shed located on the property and retrieved a new tarp. The tarp was placed next to the body and JAMIE WATERMAN rolled the body onto the tarp.

26. After placing the body on the tarp, the body was moved onto the bed of JAMIE WATERMAN's blue 1993 GMC pickup. The blue 1993 pickup is similar in description to the vehicle observed by witness Sawyer McGee in the vicinity of where Ms. Bush's cellular telephone was discovered near Maysville, Arkansas. JAMIE WATERMAN and AMBER WATERMAN drove the body to an area within a short distance from their residence. JAMIE WATERMAN stated that his pickup was having transmission problems and could not travel far. After arriving at the spot where the body was to be hidden, JAMIE WATERMAN and AMBER WATERMAN removed the body from the bed of his pickup and placed it on the ground. AMBER WATERMAN then removed the tarp. JAMIE WATERMAN and AMBER WATERMAN drove back to their residence where AMBER WATERMAN burned the tarp.

27. JAMIE WATERMAN was asked if he could show the interviewers where the body was taken to. JAMIE WATERMAN agreed and led agents and detectives to where he and AMBER WATERMAN had left the body. Upon arrival at this location, a charred human

9

Case 6:22-sw-02179-DPR    Document 1-1    Filed 12/27/22    Page 9 of 13

body, later identified as Ashley Bush, was discovered.

28. During the search of the residence located at 1848 Laughlin Ridge Road, the FBI evidence response team members discovered a charred human hand and bone fragments located in a burn pile behind the residence.

29. During the autopsy of Ms. Bush, it was determined that she suffered a gunshot wound to the torso.

30. On November 8, 2022, FBI SA Cameron Heath contacted and interviewed Marilyn O'Brien at the Ozark Funeral Home in Anderson, Missouri. During this interview, O'Brien informed SA Heath that on November 1, 2022, AMBER WATERMAN contacted the funeral home to arrange for a visit with the deceased newborn that was taken from AMBER WATERMAN on October 31, 2022. O'Brien documented in her records that AMBER WATERMAN had called from cellular telephone number (417) 389-6449, the TARGET CELLULAR DEVICE.

31. In reviewing records that were obtained for a cellular telephone that has been associated with JAMIE WATERMAN, I observed that between October 28, 2022 and November 3, 2022 JAMIE WATERMAN's cellular telephone had multiple contacts with the TARGET CELLULAR DEVICE.

**NEED FOR REQUESTED RECORDS**

32. The records requested for the TARGET CELLULAR DEVICE are necessary for investigators to determine if AMBER WATERMAN was located in the vicinity of the incident(s) described within this affidavit. This will be achieved by analyzing the cellular towers and sectors utilized by the TARGET CELLULAR DEVICE. The records will also help establish the user, which is necessary for evidentiary purposes in potential

future proceedings, by analyzing the phone numbers in contact with the TARGET CELLULAR DEVICE.

33. Information is being sought for the time frame of October 25, 2022, through and including, November 3, 2022. This time frame encompasses the duration of the crime(s) currently being investigated. Oftentimes by limiting the scope of the time frame for which records are sought, law enforcement is unable to identify a pattern of life for a suspect and may interpret data for a single day incorrectly when/if compared against a slightly wider time frame. By requesting the complete time frame of records, I believe law enforcement will be able to identify a pattern of life for AMBER WATERMAN, which will reveal whether she regularly frequent the incident locations or only happened to be present in the vicinity during the time of each incident. This information is critically important to understanding if the TARGET CELLULAR DEVICE's presence near the crime scene(s), if applicable, is normal or outside the regular pattern of life for the user(s).

## **OVERVIEW OF RELEVANT TECHNOLOGY**

34. In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in most cases, the "sector" (i.e., faces of the towers) to which the

telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35. Based on my training and experience, I know that PROVIDER can collect cell-site data about the TARGET CELLULAR DEVICE. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36. Based on my training and experience, I know that wireless providers such as PROVIDER collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the users of the TARGET CELLULAR DEVICE and may assist in the identification of co-conspirators and/or victims.

## CONCLUSION

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38. I further request that the Court direct PROVIDER to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served electronically to PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Stacy Moore
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed to before me in my presence via telephone on this __27th__ day of December 2022.

The Honorable David P. Rush
Chief United States Magistrate Judge
Western District of Missouri